54 CCPA

**Application of Herbert MUTH.**
**Patent Appeal No. 7762.**

United States Court of Customs and Patent Appeals.

March 9, 1967.

George H. Spencer, Harvey Kaye, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1 to 3 of appellant's application serial No. 80,235, filed January 3, 1961, for "Receiver Arrangement."

The invention relates to a system for receiving the signals emitted by a swallowable pill-type transmitter, or endoradiosonde, which is located in the digestive tract of a patient. The signals picked up by the external receiving coils correspond to measured conditions in the patient's digestive tract, such as the pH factor. Basically, appellant's invention resides in the use of a plurality of receiving coils, preferably two or three, with non-parallel axes. This solves the problem inherent in the fact that the endoradiosonde, while traveling through the digestive tract, may become so oriented that the inductive coupling between the transmitting and receiving coils may at times be zero, when only one coil of each type is used, with the result being that

no signal is picked up by the receiver system.

Generic claim 1 is illustrative:

1. A receiver arrangement for use with a swallowable pill-type transmitter having a transmitting coil, said receiver arrangement comprising, in combination: a plurality of receiving coils having non-parallel axes; receiver output means; and circuit means interposed between said plurality of receiving coils and said output means for connecting to the latter the particular receiving coil having, at any given instant, the highest coupling with the transmitting coil, and therefore capable of feeding the strongest signal to said output means.

Dependent claims 2 and 3 are directed to specific embodiments having three receiving coils with axes in mutually perpendicular planes, and two coils with non-parallel, non-perpendicular axes, respectively.

The references relied on are as follows:

| Martin | 1,719,896 | July 9, 1929 |
|---|---|---|
| Moore | 1,849,632 | March 15, 1932 |
| Fisher | 1,855,184 | April 26, 1932 |
| Grimes | 2,250,370 | July 22, 1941 |
| McDonald | 2,551,805 | May 8, 1951 |
| Crosby | 2,720,583 | October 11, 1955 |
| Bieganski | 3,051,896 | August 28, 1962 |
| | | (filed May 6, 1958) |

Bieganski, the primary reference, describes an external system for use with a "radio pill," or endoradiosonde, located in the gastrointestinal tract. The reference discloses that "[a] loop antenna may be used to provide the inductive coupling between the pill circuit and the resonant circuit of the apparatus."

The secondary references disclose, inter alia, various arrangements of loop antennas and diversity reception systems utilizing a plurality of such antennas and switches connecting the antennas receiving the strongest signals to the output means.

Martin, for example, shows "a receiving circuit which takes advantage of the difference in the space absorption characteristics of two loop antennae * * * placed with their axes perpendicular to each other." The patent further discloses that "the signal from three antennae at one point may be combined, as would be obtained by the use of two crossed loops and a vertical antenna."

Fisher describes a radio receiving system which includes two loop antennas, and states that "[b]est results are secured by maintaining an angular relation between the planes of [the two loop antennas], although this angular relation is generally somewhat less than 90 degrees."

The examiner's position is that it would be obvious to modify the loop antenna system disclosed by Bieganski in light of the secondary references, particularly Martin and Fisher. The examiner concisely stated his reasoning in the final rejection as follows:

In summation, a loop antenna arrangement in connection with a swallowable pill-type transmitter is old in the art [Bieganski]; a loop antenna diversity system is old in the art [Martin, Fisher, and the other secondary references of record]; thus a loop antenna diversity receiver system can find one application in connection with a swallowable pill-type transmitter, and such an application would be obvious to

one possessing ordinary skill in the art.

In affirming the examiner, the board adopted his position as its own. Appellant states the issue here as "whether it is obvious, within the meaning and spirit of 35 U.S.C. § 103, to apply the diversity principle known in the radio art to the swallowable transmitter art." We agree with the Patent Office tribunal that it is obvious. We think that Bieganski's disclosure of a "loop antenna" system would cause the ordinarily skilled artisan to resort to the loop antenna art for details as to the design and arrangement of such devices. In that art the Patent Office classifies at least some of the numerous patents describing the diversity principle, which relates to the use of switches and a plurality of antennas with nonparallel axes in order to insure reception of the strongest signals emitted by a radio transmitter.

Appellant argues that Bieganski's use of the term "loop antenna" is confusing and "technically inaccurate because the arrangement shown in Bieganski involves the use of coils which are inductively or magnetically coupled with each other." In response to this argument, the examiner pointed out the disclosure in Grimes that "a loop antenna is primarily responsive only to the magnetic component of the desired electromagnetic wave signal," which shows that a loop antenna is, in effect, a magnetically coupled, or inductive, coil. Also, while the inductive coil *shown* by Bieganski may not, in strict terminology, be a loop antenna, we note the reference disclosure that the depicted inductor "may actually be a loop antenna in order to provide inductive coupling * * *." Thus the patent specification clearly discloses a loop antenna system, even if the drawings are not considered to show one.

The MacKay article in the January 3, 1958, engineering edition of "Electronics," entitled "Pill Telemeters from Digestive Tract," is also pertinent here in its disclosure that the "[s]ignal is picked up by antenna loop connected to receiver." It is evident that both Bieganski and MacKay describe the use of loop antenna systems together with endoradiosondes.

Appellant cites the MacKay article and a 1959 German publication entitled "Nachrichtentechnik," Vol. 9, p. 452, as evidence that the problem of orientation of the main axis of the pill-type transmitter relative to the receiving antenna is one which was recognized to exist in the prior art. We agree that this is relevant evidence, and that the proposals disclosed by MacKay for modifying the transmitter design are also relevant evidence of the unobviousness of appellant's solution of the problem by modification of the receiver system. See Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545.

However, the prior art recognition that the essence of the problem is orientation of the transmitter axis in relation to that of a single antenna clearly suggests, we think, that the problem might be solved satisfactorily by redesigning *either* the pill-type transmitter or the antenna reception system. Since both the 1958 MacKay article and the Bieganski patent (application filed May 6, 1958) clearly disclose the use of loop antenna systems, we think it would have been obvious to the skilled artisan to resort to the loop antenna art for details as to the design and arrangement of such devices, at the time appellant's invention was made, which we consider to be January 16, 1960, the filing date of appellant's counterpart German application, priority of which is claimed under 35 U.S.C. § 119. The secondary references disclose the use of a plurality of such antennas having non-parallel axes in diversity receiver systems such as those disclosed and claimed by appellant.

Since we find no reversible error in the decision of the board, that decision is affirmed.

Affirmed.